(13 Misc. Rep. 356.)

### LORTON et al. v. MAYOR, ETC., OF CITY OF NEW YORK.

(Supreme Court, Special Term, New York County.    June, 1895.)

WHARVES—RIGHT TO WHARFAGE—GRANT FROM NEW YORK CITY.
    Where the holder of a water grant from the city of New York surrendered to the city the right to collect wharfage in front of the premises granted so long as the public street and slip in front of said premises should be kept open, the city is not, in order to preserve its rights under such surrender, confined to maintaining the identical basin which existed at the time the surrender was made, so long as the basin maintained affords facilities to the grantee equal to the original basin.

Action by Alfred H. Lorton and others against the mayor, aldermen, and commonalty of New York.    Complaint dismissed.

On the 20th day of February, 1804, the mayor, aldermen, and commonalty of the city of New York granted to Lewis Lorton, the predecessor in title of the plaintiffs, in the usual form of water grants, the strip of land under water, 55 feet 6 inches in width, in front of his upland, and extending some 210 feet to West street.    At that time Lorton was, as recited in the grant, the owner of the land above and adjoining the original high-water mark, bounded on the north by Spring street, then called "Brannon Street," and extending southerly from Spring street, 55 feet 6 inches.    The grant contained the usual covenants, and the grantee was, whenever required by the grantor, to build and maintain West street 70 feet wide along the westerly end of the premises, and Washington street 50 feet wide through the premises.    He was also to build and maintain a street of 25 feet in width along the northerly side of the premises, from high-water mark to West street, this street being now absorbed into and forming a part of the lower end of Spring street.    He was also to have, use, enjoy, take, and hold forever "all manner of wharfage, cranage, advantages, and emoluments growing by or from the said wharf or street of 70 feet in breadth, called 'West Street,' fronting on the said North river, opposite to the said premises hereby granted, and every part thereof."    On the 1st of March, 1804, an agreement was entered into between Lewis Lorton and the mayor, aldermen, and commonalty of the city of New York in which it was recited that on the 20th day of February, 1804, the city, in consideration of the rents and covenants therein contained, on the part of said Lorton, had granted and conveyed to him the water lot, vacant ground, and soil under water, to be made land and gained out of the North or Hudson river, situate and being between high-water mark and a certain new street of 70 feet in breadth, to be laid out and made fronting on the said North or Hudson river, called "West Street," opposite to and adjoining other land be-

longing to the said Lewis Lorton, on the southerly side of Brannon street, in the Eighth ward of the city of New York; bounded northerly by Brannon street and a certain wharf or street of 25 feet in breadth, therein mentioned, to be made on the southerly side of the said slip, below Washington street, called "Brannon Street Slip"; easterly, at high-water mark, by other land belonging to said Lewis Lorton; southerly by other land and vacant ground belonging to or granted or to be granted to Anthony Lispenard, Esq.; and westerly by the said intended new street, to be called "West Street,"—containing in depth on both sides, from high to low water mark, inclusive of Washington street, which crosses through the same, 60 feet; and from thence to the said intended new street, to be called "West Street," 210 feet, be the same more or less, and in breadth, at high and low water mark, and also on the said new intended street, called "West Street," 55 feet and 6 inches. The agreement further recites that by said water grant the city further covenanted and agreed to allow said Lorton to have and use and take all the wharfage, cranage, advantages, and emoluments growing or accruing by or from the said wharf or street, 70 feet in breadth, called "West Street." It also recites that whereas, since the making and executing of the said grant, the said parties of the first part, by and with the consent of the said parties of the second part, have directed and made, or caused to be sunken and made, a certain bulkhead or wharf of 200 feet in length fronting on the said river, at the westerly end or foot of Brannon street, for the purpose of forming a public slip or basin, which said wharf extends across the westerly end of the said water lot, by the said indenture granted to the said party of the second part, on the easterly side of the said intended new street, called "West Street," whereby the right of the said Lewis Lorton to receive and take the wharfage and cranage in the said indenture mentioned will become incompatible with the plan and design of the said parties of the first part, and disadvantageous to the said city, it is therefore agreed and declared and covenanted by the said Lewis Lorton, for himself, his heirs and assigns, to and with the mayor, aldermen, and commonalty of the city of New York and their successors, that until the said intended new street, called "West Street," shall be made and formed as aforesaid, and from thence afterwards, so long as they shall think it advisable to reserve and keep open the said public slip or basin, they, the said mayor, aldermen, and commonalty, and their successors, shall and may have, use, etc., all such wharfage, cranage, advantages, and emoluments as shall arise or accrue by or from the said public wharf or pier across the westerly end of the said premises, on the easterly side of West street, and also by or from the said wharf or street, to be called "West Street," opposite to the said premises, so long as the same shall be reserved as aforesaid, anything or any right of said Lewis Lorton unto such wharfage and cranage in the said indenture mentioned to the contrary notwithstanding. By the said agreement Lewis Lorton also covenanted to cause to be made and finished a street of at least 25 feet in breadth along the easterly side of the said bulkhead or wharf, across the said premises, the whole breadth thereof, and that the said wharf or street of 25 feet in breadth shall be and remain a public street or wharf, etc.

In the stipulation which was filed upon the trial of this action it was agreed that between the years 1825 and 1830 the wharf or street called "West Street," described in said indenture of February 20, 1804, and in said agreement of March 1, 1804, was built; that about the same time two piers were built by the defendant extending from West street into the Hudson river, so that from the year 1830, or prior thereto, there existed a public slip or basin 200 feet in width from north to south, maintained, kept open, and reserved by the defendant, the northerly and southerly sides of which were the said two piers above mentioned, and the easterly side or end thereof (200 feet in width from north to south) was the wharf or street of 70 feet in breadth, called "West Street," and that the 55 feet and 6 inches in length of said wharf or street described in the said grant to Lewis Lorton, February 20, 1804, in front of the premises granted to him, formed a part of the said easterly side or end of the said slip or basin, and the said slip or basin was the same public slip or basin mentioned in the agreement of March 1, 1804. It is also stipulated that during the whole of said period of time from the building of the wharf or street to some

time between the 4th day of May, 1874, and the 30th day of April, 1875, the said public slip or basin was kept open and reserved by the defendant, and the said 55 feet and 6 inches of said wharf or street formed a part of the side of said public slip or basin; that during all that period the mayor, aldermen, and commonalty of the city of New York, pursuant to the agreement of March 1, 1804, have at all times been in the receipt and enjoyment of the wharfage, etc., growing or accruing from the said 55 feet and 6 inches of said wharf or street called "West Street," and that said Lorton and his successors duly fulfilled, observed, and performed the covenants, etc., on their part to be performed by the said indenture and by the agreement. The stipulation then recites the acts of April 18, 1871, and the 16th day of May, 1872, creating a department of docks in the city of New York, which was authorized to acquire for the purpose thereof, and in the name of and for the benefit of the corporation of the city of New York, any and all wharf property in said city to which the corporation then had no right or title, and any rights, terms, easements, and privileges pertaining to any wharf property, and any lands under water and uplands in the said city not owned by the corporation. It is further stipulated: That the mayor, aldermen, and commonalty of the city of New York, between the 4th of May, 1874, and the 30th of April, 1875, pursuant to a plan adopted under said acts by the commissioners of the sinking fund, demolished and removed the said two piers built by it extending from West street into the Hudson river, forming the northerly and southerly sides of the said public slip or basin, and built a stone bulkhead or river wall parallel to and 180 feet westerly from West street, across the whole front of the said public slip or basin, including the front of said grant to Lewis Lorton, and also filled in with earth or solid filling the intermediate space of 180 feet or thereabouts between West street and the said stone bulkhead or river wall. That subsequently thereto the defendant built a certain pier 100 feet in width and 583 feet or thereabouts in length, commencing at the outer or westerly side of the said new bulkhead wall, and extending westerly into the Hudson river, bounded by parallel lines, the northerly line of which pier was about 45 feet southerly from the southerly line of Spring street, extended westerly, and which pier has since been and is now known as "Pier New No. 34, North River"; also a certain other pier, 62 feet in width and 595 feet or thereabouts in length, also commencing at the outer or westerly side of the said new bulkhead wall, and extending westerly into the Hudson river, bounded by parallel lines, the southerly line of which pier is 142 feet northerly from the northerly line of the pier first mentioned, and which second pier has since been and is now known as "Pier New No. 35, North River." That the space between the said pier west of the said bulkhead wall has been used as a slip or basin for vessels, the rents and income of which have been collected by the defendant. It is further stipulated that all these acts were done without the consent of the plaintiffs or their predecessors in title, and without any proceedings to condemn or acquire the rights claimed by them. It is also stipulated that the defendants have ever since maintained the said stone bulkhead or river wall in the same position, so that all persons have been deprived of the beneficial uses of said property in its former condition, and it has been at all times since the acts last before mentioned, and is now, impossible for any one to realize any wharfage, cranage, advantages, or emoluments from the said wharf or street called "West Street," as formerly existing, or that the same should be used for commercial purposes as a wharf by any one.

Frank A. Irish, for plaintiffs.

Francis M. Scott, Corp. Counsel, and Charles Blandy, for defendant.

LAWRENCE, J. This action is brought to obtain injunctive relief, it being contended that the defendant has been guilty of a continuing trespass, and a continuing nuisance, by reason of the erection of the piers and the stone wall aforesaid, preventing the exercise by the plaintiffs of their alleged right to collect wharfage

at West street for that part of the same extending 55 feet and 6 inches southerly from Spring street. It is contended by counsel that the plaintiffs have a right to maintain this action, under the cases of Langdon v. Mayor, etc., 93 N. Y. 129, Williams v. Mayor, etc., 105 N. Y. 429, 11 N. E. 829, and Kingsland v. Mayor, etc., 110 N. Y. 569, 18 N. E. 435. I am of the opinion, however, upon the foregoing statement of facts, that neither of these cases is an authority in the plaintiffs' favor in this action. Although the right to collect wharfage in front of the premises described in the water grant of February 20, 1804, was given to Lewis Lorton, by the agreement of March 1, 1804, Lorton covenanted that the mayor, aldermen, and commonalty of the city of New York, and their successors, until West street should be made and formed, and as long afterwards as they should think it advisable to reserve and keep open the said public slip or basin, should use and take to themselves all the wharfage or cranage, etc., which should arise from the wharf or pier across the westerly end of said premises on the easterly side of West street, and also from the said wharf or street to be called "West Street," so long as the same should be reserved and kept open as a public slip or basin. In this case, as a matter of fact, while under the plan approved by the commissioners of the sinking fund, West street has been widened, so that it is 250 feet in width, instead of 70, and the slip has been extended by reason of the erection of the new piers, no access to the plaintiff's premises on the easterly side of West street had been interfered with. There is a public street still in front of him and also a public basin, much more advantageous, as matter of fact, to his premises, than the old basin and the old street, which have been replaced by the improvements. In the cases before referred to, the right of the landowners fronting on West street to collect wharfage had been taken away without compensation having been made therefor. In this case Lorton surrendered all his right to collect wharfage while the public street and slip in front of his premises were kept open. I do not think that the agreement in question confines the city to maintaining the identical piers, bulkhead, and structures which existed in front of Lorton's premises as long as they left him access to the river front, and maintained a slip as large or larger than the slip which existed when the agreement of March 1, 1804, was made. Even if a technical breach of the agreement of March 1, 1804, by the defendants, has been shown, no case, in my opinion, is presented for relief for which the plaintiffs demand judgment in this action, and the complaint will therefore be dismissed upon the merits, with costs. Draw decision accordingly, and settle on one day's notice.